**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIMINAL NO. 18-cr-00215-TDC** |
| **DEMETRIUS KEATON,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \*

## DEFENDANT'S SENTENCING MEMORANDUM

**Mr. Keaton is not subject to 1) the Armed Career Criminal Act or 2) the Armed Career Offender enhancement U.S.S.G. § 4B1.4(c)**

## Introduction

Mr. Keaton plead guilty and accepted responsibility for Count 1, a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm), § 924(a)(2), and Count 2, a violation of 21 U.S.C. § 841(a)(1) (PWID), 21 U.S.C. § 841(b)(1)(C). Counts 1 & 2 are grouped for guideline calculation purposes under U.S.S.G. § 2D1.1. The greater offense level is 24 for Count 2. Mr. Keaton's criminal history category is III, based on 5 points. The total offense level is 24 based on a +2-level increase for a dangerous weapon, U.S.S.G. § 2D1.1(b)(1), and a -2-level downward adjustment for prompt acceptance of responsibility. U.S.S.G. § 3E1.1(a). The sentencing guidelines range is therefore 63-78 months. Once the Court assesses the factors under 18 U.S.C. § 3553(a), it should conclude that a sentence of imprisonment at the low end of the guidelines range is sufficient, but not greater than necessary to accomplish the goals of sentence.

However, the Presentence Investigation Report ("PSR") includes enhancements to the offense level and criminal history based on its determination that Mr. Keaton is subject to the Armed Career Criminal Act § 18 U.S.C. § 924(e)(1) ("ACCA"), and is therefore an armed career

criminal under USSG § 4B1.4. The PSR identified three predicate convictions: (1) Attempted Distribution of Cocaine – Superior Court for the District of Columbia, Dkt. No.: 1991-FEL-009100; (2) Possession with Intent to Distribute CDS—Circuit Court for Montgomery County, Maryland Dkt. No.: 74415C; & (3) Possession with Intent to Distribute Cocaine, Superior Court for the District of Columbia, Dkt. No.: 2000-FEL-007571. All three convictions have a statutory maximum penalty greater than 10 years imprisonment.

Accordingly, the PSR calculates a Chapter Four enhancement, USSG § 4B1.4(b)(3)(A) (Armed Career Criminal), which results in a base offense level of 34 for Count 2 and a total offense level of 32 (-2 for acceptance of responsibility under U.S.S.G. §3E1.1(a)). The PSR also calculates Mr. Keaton's criminal history as a category VI. USSG § 4B1.4(c). With a total offense level of 32 and a Criminal History Category of VI, the advisory sentencing guidelines range would be imprisonment for 210-262 months.

Even if the Court imposed a sentence at the low end of the guidelines range as calculated by the PSR, Mr. Keaton would be over sixty years old upon his release from prison. Such a draconian sentence is greater than necessary to accomplish the goals of sentencing. Fortunately, the Court must reject the PSR's recommended enhancements because Mr. Keaton's prior felony convictions are not predicates under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

*First*, Mr. Keaton's 1995 Maryland PWID-cocaine is not an ACCA "serious drug offense" because the Maryland definition of cocaine, Md. Code Ann., Art. 27, § 279 (Michie 1995, Supp.) (Exhibit A), is broader than the federal definition of cocaine under the Controlled Substances Act, 21 U.S.C. § 812(b)(2)—the definition that controls under the ACCA's "serious drug offense" definition. Due to this mismatch, a Maryland cocaine offense categorically fails to qualify as a "serious drug offense."

*Second,* the District of Columbia's *attempted* distribution of cocaine is not an ACCA "serious drug offense" because the ACCA "serious drug offense" definition only lists completed offenses. The Supreme Court's recent decision in *Shular v. United States*, __U.S.__, 140 S. Ct. 779 (2020) clarifies and reinforces this limitation.

*Third*, Mr. Keaton is not an armed career criminal because as clarified by the Supreme Court in *Mathis v. United States,* 136 S. Ct. 2243 (2016), under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government is required to allege in the indictment and prove to the jury beyond a reasonable doubt that Mr. Keaton had three previous convictions for offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Because the indictment did not allege this fact and the plea does not stipulate to this fact, the Sixth Amendment does not permit this Court to impose an ACCA sentence.

Therefore, the non-ACCA sentencing guideline range is a total offense level of 24 and criminal history category III.[1] The range of imprisonment is 63-78 months. Mr. Keaton is entitled to receive credit from February 14, 2018, to April 23, 2020 (801 days), and June 2, 2020, to the date of sentencing, August 26, 2021 (451 days), for a total credit of 1,256 days.

---

[1] Mr. Keaton is not a career offender under USSG § 4B1.1 because (1) his 1991 DC *attempted* distribution offense does not qualify as "controlled substance offenses" under the sentencing guidelines (USSG § 4B1.2(b)); and (2) neither the 1991 DC attempted distribution offense nor the 1995 Maryland PWID conviction qualify as "two prior felony convictions" because they are not scored under USSG § 4A1.1. *See*, USSG §4B1.2(c) ("The term 'two prior felony convictions' means … (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c)."). Three appellate courts (the D.C., Third, and Sixth Circuits) have uniformly ruled that an attempt offense can never qualify as a § 4B1.2(b) "controlled substance offense." *See United States v. Nasir*, 982 F.3d 144, 159-60 (3d Cir. 2020); *United States v. Havis*, 927 F.3d 382, 385-87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1090-92 (D.C. 2018). Likewise, Judge Hazel in *United States v. Faison,* 2020 WL 815699, at *8-9 (D. Md. Feb. 18, 2020) held the same upon adopting the reasoning of *Havis* and *Winstead*; *see also United States v. Bond*, 418 F.Supp.3d 121 (S.D.W.V. 2019) (relying on *Winstead* and *Havis* to hold that an attempt is not a § 4B1.2 "controlled substance offense").

## Background

On February 14, 2018, law enforcement executed a search warrant at Mr. Keaton's residence in Silver Spring, Maryland. Law enforcement located and seized $1,910 in U.S. currency near firearm ammunition on the top shelf of the master bedroom's closet. Two firearms and body armor were located and seized from the top shelf of a closet in a bedroom belonging to Mr. Keaton's minor children. Law enforcement also seized 47.93 grams of cocaine base and 122.73 grams of cocaine from a shoebox on a bathroom counter.

Mr. Keaton was arrested and transported to the Silver Spring police station where he was advised of his *Miranda* Rights, and he admitted to distributing cocaine base and possessing the firearms, bulletproof vest, and ammunition. The recovered U.S. currency was proceeds from Mr. Keaton's narcotics trafficking. Prior to possessing the firearms and ammunition, Mr. Keaton had been convicted of an offense punishable by more than one year imprisonment, and his civil rights had not been restored. When Mr. Keaton possessed the firearms and ammunition, he knew that he had been convicted of an offense punishable by more than one year of imprisonment.

## Statutory Penalties

**Count 1:** Felon in Possession of a Firearm (18 U.S.C. § 922(g)(1)) – Not more    10 years imprisonment, not more than 3 years supervised release, a fine not more than $250,000, and a special assessment fee of $100.

**Count 2:** Possession of Controlled Substances with Intent to Distribute (21 U.S.C. §§ 841(a)(1) & (b)(1)(C)) – Not more than 20 years imprisonment, at least 3 years supervised release, a fine not more than $1,000,000.

## Impact of the Plea Agreement

In the Plea Agreement, Mr. Keaton agreed to waive indictment and plead guilty to a Two Count Superseding Criminal Information charging him with Count 1: Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and Count 2: Possession of Controlled Substances

with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C).

The Government and Mr. Keaton stipulated and agreed to the Statement of Facts set forth in Attachment A of the plea agreement. For Count 1, it was the Government's position the defendant committed the instant offense subsequent to sustaining a felony conviction for either a crime of violence or a controlled substance offense and the applicable base offense level was 20, pursuant to USSG §2K2.1(a)(4). It was Mr. Keaton's position that he was a prohibited person at the time he committed the instant offense, and the applicable base offense level was 14, pursuant to USSG §2K2.1(a)(6).[2]

It was the Government's position Mr. Keaton used or possessed a firearm in connection with another felony offense and a +4-level increase applies to the base offense level pursuant to USSG §2K2.1(b)(6)(B). Mr. Keaton reserved the right to argue that his increase did not apply.[3]

For Count 2, the parties agreed that quantity of controlled substances attributable to Mr. Keaton was equivalent to at least 100 kilograms but not lessthan 400 kilograms of converted drug weight, and the applicable base offense level is 24, pursuant to USSG §2D1.1(c)(8).

At sentencing, both parties agree to reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering anyappropriate factors under 18 U.S.C. § 3553(a).[4]

The parties agreed and stipulated that Counts 1 and 2 grouped, pursuant toUSSG §3D1.2, and the adjusted offense level was 24.

---

[2] Mr. Keaton agrees the base offense level is 20.
[3] Mr. Keaton does not argue against this increase.
[4] Mr. Keaton reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of 32. The Government reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of 22.

If the Court determines that Mr. Keaton is an Armed Career Criminal, the Government asserts the resulting offense level would be 34, pursuant to USSG §4B1.4(b)(3)(A) because the defendant possessed the firearm in connection with a controlled substance offense.

Based upon Mr. Keaton's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct, the parties agreed a -2-level downward adjustment was appropriate, pursuant to USSG §3E1.1(a).

There was no agreement as to Mr. Keaton's criminal history.

Both parties agreed no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines were in dispute or would be raised in calculating theadvisory guidelines range.

## Guideline Calculations

Based on the Plea Agreement, Counts 1 and 2 of the Superseding Criminal Information group pursuant to USSG §3D1.2(c). In the case of counts grouped together pursuant to USSG §3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group.

## Count 1

For an offense in violation of 18 U.S.C. § 922(g)(1), the applicable guideline is found under USSG § 2K2.1 – Unlawful Receipt, Possession, or Transportation ofFirearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition. Mr. Keaton committed this offense after previously being convicted of Attempted Distribution of Cocaine (Superior Court for the District of Columbia Dkt. No.: 1991-FEL-009100), a felony, controlled substance offense that received criminal history points pursuant to USSG §4A1.1. Because Mr. Keaton committed any

part of the instant offense after sustaining one felony conviction of either a crime of violence or a controlled substance offense, the base offense level is **20**, under USSG §2K2.1(a)(4).

During this instant offense, Mr. Keaton possessed a firearm in connection with a drug trafficking offense. Because a firearm was used or possessed in connection with another felony offense, the base offense level is increased by +**4-levels**, pursuant to USSG §2K2.1(b)(6)(B).

No other specific offense characteristics are applicable for Count 1, and the adjusted offense level for Count 1 is **24**.

### Count 2

For an offense in violation of 21 U.S.C. § 841(b)(1)(C), the applicable guideline is found under USSG §2D1.1 – Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy. According to the Plea Agreement, 47.93 grams of cocaine base and 122.73 grams of cocaine are attributable to Mr. Keaton.

Because the offense involved more than one controlled substance, the controlled substances are converted into their equivalent weight in marijuana, the quantities are added, and the total is looked up in Drug Quantity Table to obtain a combined offense level.

Pursuant to the Drug Conversion Tables in USSG §2D1.1, Application Note # 8(D), 1 gram of cocaine base equals 3,571 grams of marijuana and 1 gram of cocaine equals 200 grams of marijuana. Therefore, 47.93 grams of cocaine base equal 171.15803 kilograms (171,158.03 grams) of marijuana and 122.73 grams of cocaine equal 24.546 kilograms (24,546 grams) of marijuana for a total combined converted weight of 195.70403 kilograms of marijuana.

Because the offense involved at least 100 kilograms but not more than 400 kilograms of marijuana, the base offense level is **24**, pursuant to USSG §2D1.1(c)(8).

During this instant offense, Mr. Keaton allegedly possessed a firearm. Because a dangerous weapon (including a firearm) was possessed, the offense level is increased **2 levels**, pursuant to USSG §2D1.1(b)(1). No other specific offense characteristics are applicable for Count 1, and the adjusted offense level for Count 1 is **26**.

Since Count 2 has the higher adjusted offense level, it is the controlling count for Group 1.

## **Disputed Issues in the PSR**

Mr. Keaton has three prior felony convictions that the PSR determines to be serious drug offenses under the ACCA. (Attempted Distribution of Cocaine - Superior Court for the District of Columbia, Dkt. No.: 1991-FEL-009100; Possession with Intent to Distribute CDS – Circuit Court for Montgomery County, Maryland, Dkt. No.: 74415C; & Possession with Intent to Distribute Cocaine, Superior Court for the District of Columbia, Dkt. No.: 2000-FEL-007571). All three convictions have a statutory maximum sentence greater than 10 years imprisonment.

The PSR concludes that due to Mr. Keaton's conviction in Count 1 for an offense under 18 U.S.C. § 922(g)(1) and having at least three prior convictions for serious drug offenses, he is subject to the provisions found in 18 U.S.C. §924(e) and classified as an Armed Career Criminal.

The offense level for an Armed Career Criminal is the greatest of: 1) the offense level applicable from Chapters 2 and 3; or 2) the offense level from USSG §4B1.1 (if applicable); or 3)(A) the offense level for an Armed Career Criminal is **34** if the defendant used or possessed a firearm in connection with either a crime of violence or a controlled substance offense; or (B) **33**, otherwise, pursuant to USSG §4B1.4.

In this case, Mr. Keaton possessed a firearm in connection with a controlled substance offense, therefore, the offense level for an Armed Career Criminal would be **34**, pursuant to USSG §4B1.4(b)(3)(A). Due to Mr. Keaton's prompt recognition and affirmative acceptance of personal

responsibility for his criminal conduct, the parties agreed a **-2-level** downward adjustment was appropriate, pursuant to USSG §3E1.1(a).

However, for the reasons set forth below, Mr. Keaton is not an Armed Career Criminal.

**Criminal History**

On September 21, 2020, the United States Probation and Pretrial Services Office prepared a PSR that detailed Mr. Keaton's prior criminal history. Mr. Keaton's prior adult convictions were accurately scored and result in a total of five (5) criminal history points and a Criminal History Category of III.

However, the PSR has erroneously classified Mr. Keaton as an Armed Career Criminal. The Criminal History Category for an Armed Career Criminal is the greatest of: 1) the Criminal History Category from Chapter 4, Part A (Criminal History) or §4B1.1 – Career Criminal; 2) Category VI, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence or a controlled substance offense, or if the firearm possessed by the defendant was a type described in 26 U.S.C. § 5845(a) or; 3) Category IV.

In this case, for the reasons set forth below, Mr. Keaton is not an Armed Career Criminal. His Criminal History Category should remain III. With a total offense level of 24, the advisory guidelines range would be 63-78 months. These guidelines do not take into consideration any mitigating factors pursuant to 18 U.S.C. § 3553(a).

**I.      Mr. Keaton does not have three prior convictions that qualify him for a sentencing enhancement under the Armed Career Criminal Act.**

A defendant is subject to the ACCA if he has three prior convictions for a "serious drug offense" or "violent felony" "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

A prior offense only qualifies as a "serious drug offense" under the ACCA if it is punishable by a term of imprisonment of 10 years or more, and it is

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii). As further discussed below, under these terms, Mr. Keaton's 1995 Maryland conviction for PWID-cocaine categorically fails to qualify as a "serious drug offense."

## A. The categorical approach applies in determining whether a prior conviction qualifies as a "violent felony" or "serious drug offense" under the ACCA.

In determining whether a conviction qualifies as a "violent felony" or "serious drug offense," sentencing courts must employ the categorical approach. *See Descamps v. United States*, 570 U.S. 254, 260 (2013); *Shular*, 140 S. Ct. at 784-85. This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "violent felony" or a "serious drug offense." *Descamps*, 570 U.S. at 261 (citation and internal quotation marks omitted); *Shular,* 140 S. Ct. at 784 ("A court may only look to a state offense's elements, not to the facts of the case or labels pinned to the state conviction" in determining whether an offense qualifies as an ACCA "serious drug offense").

In addition, under the categorical approach, a prior offense is only a "violent felony" or "serious drug offense" if all the criminal conduct covered by a statute—"including the most innocent conduct"—matches or is narrower than the "violent felony" or "serious drug offense" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "violent felony" or "serious drug offense,"

then the statute categorically fails to qualify as an ACCA predicate.  In other words, if the "full range of conduct" criminalized by a statute does not fall within the "violent felony" or "serious drug offense" definition, then there is a "mismatch in elements" that disqualifies the statute as an ACCA predicate.  *Torres-Miguel*, 701 F.3d at 171; *accord Descamps*, 570 U.S. at 276.

Applying the categorical approach here, Mr. Keaton's 1995 Maryland conviction for PWID-cocaine categorically fails to qualify as an ACCA predicate.

**B.**    **Mr. Keaton's prior Maryland conviction for PWID-cocaine categorically fails to qualify as a "serious drug offense" because Maryland criminalizes a derivative of cocaine that federal law does not.**

Mr. Keaton's prior Maryland 1995 conviction for PWID-cocaine (Md. Code Ann., Art. 27, § 286(a)(1) (Michie 1995 Supp.) is not a "serious drug offense" under the ACCA.  The Maryland definition of cocaine is broader than the federal definition of heroin under the Controlled Substances Act—the definition that controls under the ACCA's "serious drug offense" definition.  As further discussed below, Maryland law criminalizes a derivative of cocaine that federal law does not.  Therefore, the Maryland cocaine definition sweeps broader than the federal cocaine definition.  Due to this categorical mismatch, Mr. Keaton's Maryland cocaine conviction cannot be used to enhance his federal sentence under the ACCA.

**1.**    **Cocaine, as defined under federal law, excludes a derivative of cocaine that Maryland does not.**

Under federal law, cocaine is listed as a Schedule II controlled substance.  *See* 21 U.S.C. § 812(c), Schedule II.  Part 1308 of the Drug Enforcement Administration regulations sets out the schedules of controlled substances listed in §202 of the Controlled Substances Act (21 U.S.C. §812) as well as additions, deletions and transfers to another schedule by rulemaking. Section

1308.12 lists the general categories of substances that are controlled in Schedule II (unless specifically excepted or listed in another schedule):

- opium and opiates (but not apomorphine, thebaine-derived butorphanol, dextrorphan, nalbuphine, nalmefene, naloxone and naltrexone and their respective salts);
- any salt, compound, derivative or preparation that is chemically equivalent or identical to these opium and opiate substances (but not the isoquinoline alkaloids of opium);
- opium poppy and poppy straw;
- **coca leaves, including cocaine and ecgonine, except for the following substances that are not included:**
     **(1) decocainized coca leaves and extractions of coca leaves which do not contain cocaine or ecgonine,**
     **(2) [123I] ioflupane;**
- concentrate of poppy straw;
- opiates (but not dextrorphan and levopropoxyphene);
- amphetamines and certain other stimulants;
- anibarbital and certain depressants;
- certain hallucinogenic substances; and
- specifically listed immediate precursors of controlled substances (see §1308.12(g)).

Part 1308—Schedule of Controlled Substances, (2006 WL 3432491) (emphases supplied). In short, ioflupane is excluded from the federal definition of cocaine.

### 2. Cocaine, as defined 1995 under Maryland law, includes ioflupane.

However, in 1995, Maryland law criminalized ioflupane (which is a derivative of ecgonine). Md. Code Ann., Art. 27, § 279 Schedule II (Michie 1995, Supp.) (Exhibit A, Affidavit of Benjamin Streifel, Ph.D).[5]   In stark contrast to the federal law (which excludes ioflupane),

---

[5] Md. Code Ann., Art. 27, § 279 Schedule II (Michie 1995, Supp.), provides:

> Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or

Maryland law (until 2020) criminalized ioflupane. *See id.* Exhibit A. Therefore, in 1995, one could

be prosecuted in Maryland for possession of a derivative of ecognine, *to wit*, ioflupane, but not

under federal law. Accordingly, the Maryland definition of cocaine is broader than the federal

definition. Due to this mismatch in elements, Mr. Keaton's 1995 Maryland cocaine conviction

categorically fails to qualify as a "serious drug offense" under the ACCA.[6]

The Seventh Circuit's decision in *United States v. Ruth,* 966 F.3d 642 (7th Cir. 2020) is

on point. In that case, at issue was whether the definition of Illinois cocaine matched the federal

definition of cocaine under the Controlled Substances Act. The Seventh Circuit held that the

Illinois definition of cocaine was broader than the federal definition because the Illinois definition

"includes optical, positional, and geometric isomers" whereas the federal definition of cocaine

---

> preparation which contains any quantity of any of the substances
> referred to in this paragraph.

Maryland criminalized ioflupane until 2020, when it adopted the federal definition for cocaine:

> (4) coca leaves and any salt, compound, derivative, or preparation
> of coca leaves, including cocaine and egonine and their salts,
> isomers, derivatives and salts of isomers and derivatives, and any
> salt, compound, derivative, or preparation thereof which is
> chemically equivalent or identical with any of these substances,
> except that the substances may not include:
> (i) decocainized coca leaves or extraction of coca leaves, which
> extractions do not contain cocaine or ecgonine; or
> (ii) ioflupane; and

Controlled Dangerous Substances—Schedules, 2020 Maryland Laws Ch. 298 (H.B. 674).

[6] Although Mr. Keaton's prior Maryland PWID-cocaine conviction fails to qualify as an ACCA
"serious drug offense" because the definition of cocaine in Maryland does not match the definition
of cocaine under the federal Controlled Substances Act, the same challenge does not apply to the
§ 4B1.2(b) definition of "controlled substance offense." In *United States v. Ward*, 972 F.3d 364,
373 (4th Cir. 2020), the Fourth Circuit recently held that the federal Controlled Substances Act
definitions that apply to the ACCA "serious drug offense definition" do not apply to § 4B1.2
"controlled substances." Rather, under § 4B1.2, any substance that is controlled under state law
constitutes a "controlled substance offense." *Id.* at 375.

only includes "optical and geometric isomers." *Id.* at 647. Due to this mismatch in elements, the Court held that the prior Illinois conviction categorically failed to qualify as a "felony drug offense" under 21 U.S.C. § 802(44). *Id.* In so doing, the Court explained that under the categorical approach, "our job is straightforward: we compare the state statute to the federal recidivism statute at issue and ask only if the state law is the same as or narrower than the federal law." Upon conducting this inquiry, the Seventh Circuit concluded that "[w]e cannot avoid the inescapable conclusion that the plain language of the state statue categorically covers a larger swath of conduct than its federal counterpart." *Id.* at 648.

Similarly, in *United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019), the Seventh Circuit concluded that an Indiana conviction for possession of methamphetamine categorically failed to qualify as a "felony drug offense" under 21 U.S.C. § 802 (44) "because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine." *Id.* at 951. This "mismatch renders the Indiana statute overbroad." *Id. see also United States v. Fernandez-Taveras*, 2021 WL 66485 at *5-6 (E.D.N.Y. Jan. 7, 2021) (holding that New York cocaine offense was not a deportable offense because it criminalizes positional isomers, which the federal Controlled Substances Act does not).

Likewise, because the Maryland cocaine definition includes ioflupane, but the federal cocaine definition does not, a Maryland cocaine offense (until 2020) can never qualify as an ACCA "serious drug offense." Because Mr. Keaton's prior Maryland cocaine distribution offense is not a "serious drug offense," he does not have the three necessary predicate convictions to qualify as an armed career criminal.

**C.** **Mr. Keaton's 1991 D.C. conviction for attempted distribution of cocaine categorically fails to qualify as a "serious drug" offense because the ACCA "serious drug offense" definition excludes inchoate offenses.**

Mr. Keaton's 1991 D.C. conviction for attempted distribution of cocaine categorically fails to constitute a "serious drug offense" under the ACCA because it is an inchoate offense. As previously referenced, a "serious drug offense," in relevant part, is defined "as an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(2)." This definition only lists completed offenses—not attempts or any other inchoate offenses.

The word "involving" that precedes the list of completed offenses in the ACCA "serious drug offense" definition does not expand the list to include inchoate offenses. As the Supreme Court reinforced in *Shular*, 140 S. Ct. at 785, the word "involving" in the "serious drug offense" definition means "necessarily require[s]." The Court did so upon citing to the dictionary definition of "involves." *Id.* (citing Random House Dictionary of the English Language 1005 (2d ed. 1987) ("to include as a necessary circumstance, condition or consequence")). Moreover, the Court explained that "[i]t is natural to say that an offense 'involves' or 'requires' certain conduct." *Id.* Therefore, under the ACCA, an offense only constitutes a "serious drug offense" if it has an element which "necessarily requires" the conduct of "manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance."

Consistent with this definition of "involves," the Court held the same in *Kawashima v. Holder*, 565 U.S. 478, 484 (2012). In that case, at issue was whether prior convictions for making a false tax return and assisting in the preparation of a false tax return each constituted an "aggravated felony" defined in relevant part, as "an offense . . . that *involves* fraud of deceit." 8

U.S.C. § 1101(a)(43)(M)(i) (emphasis added). In answering this question in the affirmative, the Supreme Court held that "offenses that involve fraud of deceit" are "offenses with elements that *necessarily entail* fraudulent or deceitful conduct." *Id.* at 484 (emphasis added).

In accord with *Shular* and *Kawashima,* the Ninth Circuit has given the same meaning to "involving" in the ACCA "serious drug offense" definition. Relying on *Kawashima*, the Ninth Circuit, in *United States v. Franklin*, 904 F.3d 793, 801 (9th Cir. 2018), explained that "involving. . . usually signifies something narrower than 'relating to.' Specifically, 'involving' often connotes 'includ[ing] (something) as a necessary part of result.'" *Id.* (quoting New Oxford American Dictionary 915 (3d ed. 2010)); *see also Desai v. Mukasey,* 520 F.3d 762, 766 (7th Cir. 2008) ("If Congress wanted a one-to-one correspondence between the state law and the federal CSA, it would have used a word like 'involving' instead of 'relating to.'").

Relying on this restrictive definition of "involving," the District Court for the District of Oregon in *United States v. Young*, 2019 WL 1928484, at *5 (D. Or. Apr. 30, 2019), recently held that an Oregon statute that criminalized the attempted distribution of drugs failed to qualify as an ACCA "serious drug offense."

Likewise, this Court should find the same with respect to the 1991 D.C. attempted distribution of cocaine conviction. It goes without saying that the inchoate offense of attempt does not "necessarily require" the completed conduct of "manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance." Therefore, Mr. Keaton's prior attempt conviction is not an ACCA "serious drug offense." This is yet another reason why Mr. Keaton does not have the three requisite predicate convictions to qualify him as armed career criminal.

**D. Under *Apprendi*, this Court cannot impose an ACCA enhancement because the government did not allege in the indictment and prove to a jury that Mr. Keaton had three prior convictions for offenses "committed on occasions different from one another."**

**1. The exception to *Apprendi* for the "fact of a prior conviction" applies only to the simple fact *of* a prior conviction, not facts *about* a prior conviction.**

As a general rule, the Fifth and Sixth Amendments to the U.S. Constitution require any fact that increases the statutory maximum or minimum penalty for a crime to be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt. *Alleyne v. United States,* 570 U.S. 99, 111 (2013); *Apprendi*, 530 U.S. at 490. There is just one exception to this rule, which allows a sentencing court to find "the fact of a prior conviction," and that exception is "narrow." *Alleyne*, 570 U.S. at 111 n.1; *Apprendi*, 530 U.S. at 490.

To fit within this narrow exception, the prior conviction must itself have been obtained in proceedings that afforded the right to a jury trial and proof beyond a reasonable doubt. *Apprendi*, 530 U.S. at 488, 496. And the features of the prior conviction that trigger the increased penalty must have been *elements* of the prior offense—that is, facts the jury had to find beyond a reasonable doubt to sustain the conviction. *See Mathis,* 133 S. Ct. at 2248, 2252 (noting Sixth Amendment concerns). When utilizing *Apprendi's* exception, the sentencing judge cannot find facts about the prior conviction, but rather can determine only "what crime, with what elements, the defendant was convicted of." *Id.* at 2252.

If however, the features of the prior convictions that trigger the increased sentence are not "the simple fact of a prior conviction," but rather include circumstances that would require the judge to "explore the manner in which the defendant committed the offense," they do not fit within the narrow exception to *Apprendi*. *Mathis,* 136 S. Ct. at 2252. Under the Constitution, these

determinations are subject to the general rule of *Apprendi*, not its exception. *Id.*; *see also Nijhawan v. Holder*, 557 U.S. 29, 40 (2009) (whether prior fraud conviction caused loss to victim exceeding $10,000 is fact about a prior conviction that must, in a criminal case, be proved to a jury beyond a reasonable doubt); *Hayes v. United States*, 555 U.S. 415, 426 (2009) (whether prior crime of violence was committed against a victim with a specified domestic relationship to defendant is a fact about a prior conviction that must be proved to jury beyond a reasonable doubt). This is because, to permit the judge to make these determinations would permit the judge to go beyond the fact of a prior conviction, to find facts about the prior conviction. Under the Fifth and Sixth Amendments, this is impermissible. *Mathis*, 133 S. Ct. 2252; *Hayes*, 555 U.S. at 426.

2. **The determination whether previous convictions were for offenses "committed on occasions different from one another" requires finding facts *about* prior convictions, not the simple fact of a prior conviction.**

The application of a the ACCA would result in a draconian sentence for Mr. Keaton, when he has sustained three previous convictions for a "violent felony" or "serious drug offense," and the offenses were "committed on occasions different from one another." 18 U.S.C. § 924(e). The Supreme Court has held that whether a previous conviction was for a "violent felony" or a "serious drug offense" is a fact that falls within the narrow exception to *Apprendi*. *Mathis,* 136 S. Ct. at 2252. This is because if the categorical approach is applied properly, the sentencing court is determining no more than "what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S. Ct. at 2252.

But the Supreme Court has never held that whether previous convictions were for offenses "committed on occasions different from one another" is a fact that falls within this narrow exception. It does not. Whether offenses were committed on different occasions is not a "simple

fact of a prior conviction" that a court can determine, using the categorical approach, consistent with *Apprendi*. *Id.* Rather, this second determination calls for wide-ranging factual findings about the convictions that are not necessarily elements of the prior offense. Therefore, these facts—that a defendant's three prior convictions are for offenses committed on occasions different from one another—fit within the rule of *Apprendi*, rather than its exception. They must be charged in the indictment and proved to the jury beyond a reasonable doubt. This is demonstrated by the plain language of the statute, the manner in which it has been interpreted, and Supreme Court precedent emphasizing the constitutional underpinnings of the categorical approach.

> **a.  The plain language of the ACCA shows these facts are subject to the rule of *Apprendi*.**

Section 924(e)(1) provides, in pertinent part that the ACCA requires three prior convictions for a "violent felony" or "serious drug offense" that were "committed on occasions different from one another." Because the statute expressly requires a showing that the offenses have been *committed* in a specific way—on occasions different from one another—the plain language of the statute describes not the fact of a prior conviction, but facts about the prior offenses, which are neither susceptible to a categorical analysis nor subject to *Apprendi*'s prior conviction exception.

The use of the word "committed" is significant. In *Taylor*, 495 U.S. 575, the Supreme Court grounded the categorical approach in the specific language of § 924(e)(1). The Court noted that the portion of the statute at issue there "refers to 'a person who . . . has three previous convictions' for—not a person who committed—three previous violent felonies or drug offenses." *Id.* at 600. The statute's reference to a defendant's *convictions* mandates that the inquiry be limited to whether the statutory definition of the prior convictions placed the prior convictions categorically within the definitions for "violent felony" or "serious drug offense." *Id.* The

Supreme Court has repeatedly returned to this distinction between conviction and commission in determining whether a statute's reference to features of a prior conviction calls for a categorical or circumstance-specific approach. *See Mathis*, 136 S. Ct. at 2252 (convicted means categorical); *Descamps*, 570 U.S. at 268-69 (same); *Nijhawan*, 557 U.S. at 37-38 (committed means circumstance specific); *Hayes*, 555 U.S. at 426 (committed means circumstance-specific).

In the portion of § 924(e)(1) at issue here, the statute refers not to convictions for specified categories, but to offenses "committed on occasions different from one another." Therefore, the use of the word "committed" rather than "convicted" establishes that the factfinder may consider not only the elements of the crime for which Mr. Keaton was convicted but his actual conduct to answer the ACCA separate occasions inquiry. The application of this circumstance-specific approach places the facts at issue squarely within the rule of, rather than the exception to, *Apprendi*. *See Nijhawan*, 557 U.S. at 40.

> **b.** **This Court's precedent reinforces that these facts are subject to the rule of *Apprendi*.**

The plain-language meaning conveyed by the ACCA's use of the word "committed" is reinforced by this Court's precedent interpreting the separate occasions inquiry. These cases illustrate that this Court's interpretation of whether crimes are "committed on occasions different from one another" has been highly fact-specific.

For example, in *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995), this Court held that to determine if offenses have been "committed on occasions different from one another" we ask "(1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) whether the defendant had the

opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense." This is clearly a very fact-intensive inquiry that goes far beyond the elements of the offense required to convict.

The application of this inquiry in *Letterlough* itself as well as in other ACCA cases demonstrate that when determining whether offenses were "committed on occasions different from one another," the court often looks to facts that go beyond the elements of the offense and are subject to the rule of *Apprendi*. *See Letterlough*, 63 F.3d at 337 (holding that two drug sales were on different occasions because "[t]he time separating the offenses was ample to give [the defendant] the opportunity to make a conscious and knowing decision to engage in another drug sale"); *United States v. James*, 337 F.3d 387, 391 (4th Cir. 2003) ("The first burglary was completed before the second started, each burglary occurred at a different location, and each involved a different victim"); *United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998) (considering, in determining whether offenses were committed on different occasions, (1) the geographic location of the offenses (specifically, that the burglaries occurred at least a mile apart from each other), (2) the nature of the offenses, and (3) the victim of the offenses). These inquiries were not based on the "fact of a prior conviction." Rather, they were based on facts about the prior offenses. After *Apprendi*, such facts must be alleged in the indictment and submitted to the jury. *Nijhawan*, 557 U.S. at 40; *Hayes*, 555 U.S at 426.

That these facts are subject to *Apprendi*'s rule is confirmed by the Supreme Court's decisions in *Mathis*, which emphasized the Sixth Amendment's underpinnings of *Taylor*'s categorical approach. When utilizing the *Apprendi* exception for the "simple fact of a prior conviction," the federal sentencing judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S.

Ct. at 2252. Whether three previous convictions were committed on occasions different from one another is not an element of the prior offenses of convictions; therefore, these facts are subject to the rule of *Apprendi*, not its exception.

Thus, the mere fact that Mr. Keaton was convicted of three separate offenses is not sufficient as a matter of law to establish that the three offenses relevant here were committed on three different occasions; further facts are needed to reach that conclusion and authorize a 15-year sentence. Because these facts were not alleged in the indictment and submitted to a jury, they cannot be used to establish to enhance Mr. Keaton's sentence.

### c. The Fourth Circuit's decision in *United States v. Thompson* is irreconcilable with *Mathis*.

In *United States v. Thompson,* 421 F.3d 278, 285-86 (4th Cir. 2005), the Fourth Circuit held that the government was not required to plead and prove beyond a reasonable doubt the sequence of an ACCA defendant's prior convictions because "[t]he data necessary to determine 'the separateness' of the occasions is inherent in the fact of the prior convictions." *Id.*[7]

But *Thompson* is irreconcilable with the Supreme Court's decisions in *Mathis*. Prior Circuit precedent is not binding if an intervening Supreme Court decision "has specifically rejected the reasoning on which the [prior decision] was based." *Quingyun Li v. Holder*, 666 F.3d 147, 150 (4th Cir. 2011) (citation omitted). *See also United States v. Winston*, 850 F.3d 677, 683 (4th Cir. 2017) (declining to follow prior panel opinion "undermined by later Supreme Court precedent" (citing *United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998))). This is so even when prior Fourth Circuit precedent is directly on point. In *Winston*, for example, the Fourth Circuit

---

[7] In *United States v. Span*, 789 F.3d 320, 330-31 (4th Cir. 2015), the Fourth Circuit recognized the "tension between *Descamps* and *Thompson*," but left "for another day the continued viability of *Thompson*." *Id.* at 331-32. But *Mathis* now clearly undermines *Thompson*.

confronted prior circuit precedent holding that Virginia common law robbery was a "violent felony" under the force clause of the ACCA. 850 F.3d at 683 (citing *United States v. Presley*, 52 F.3d 64 (4th Cir. 1995)). In an intervening decision, the Supreme Court had held that Florida criminal battery was not a "violent felony" and, in doing so, adopted an understanding of the force clause different from the Fourth Circuit had applied. *See id.* at 683–84 (citing *Johnson v. United States,* 559 U.S. 133 (2010)). The Fourth Circuit therefore revisited whether Virginia robbery was a "violent felony," unbound by its earlier precedent. *Id.*

This Court must do the same here in light of *Mathis*, which has undermined *Thompson*. In *Mathis*, the Supreme Court held that a federal sentencing judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted." 136 S. Ct. at 2252. "Elements" are "the 'constituent parts of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). "At trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing they are what the defendant necessarily admits when he pleads guilty." *Mathis*, 136 S. Ct. at 2248 (internal citations omitted). "Facts, by contrast, are mere real world things—extraneous to the crime's legal requirements." *Id.*

The Supreme Court explained that this limitation was required by *Apprendi*, which held that "only a jury, not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." *Mathis*, 136 S. Ct. at 2252 (citing *Apprendi*, 530 U.S. at 490). It explained that *Apprendi*'s requirement "means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed the offense." *Mathis*, 136 S. Ct. at 2252 (citation omitted). "He is prohibited from conducting such an inquiry himself; and

so too he is barred from making a disputed determination about 'what the defendant and state judge must have understood to be the factual basis of the prior plea' or 'what the jury in a prior trial must have accepted as the theory of the crime.'" *Mathis*, 136 S. Ct. at 2252 (citation omitted).

Pursuant to *Mathis*, the date of an offense, or whether specific circumstances of several offenses show that they were separate and distinct criminal episodes, are not elements of a prior conviction that the Sixth Amendment permits a federal sentencing judge to determine.[8] The "committed on occasions different from one another" inquiry does not ask "what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S. Ct. at 2252. It does not describe something "the prosecution must prove to sustain a conviction." *Id.* at 2248. It asks about more than "the simple fact of a prior conviction." *Id.* at 2252. Rather, it asks about the "real-world thing," the determination of which would require the court to "go beyond identifying the crime of conviction to explore the manner in which the defendant committed the offense." *Id.* at 2248, 2252. Therefore, *Thompson*, which allows a court to increase a defendant's maximum sentence based on non-elements facts relating to the ACCA separate occasions inquiry, cannot be reconciled with *Mathis*.

In sum, the only facts the federal sentencing court can be sure a prior jury found are those facts that constitute elements of the prior offense of conviction. *Mathis*, 136 S. Ct. at 2248, 2252. Whether prior offenses were "committed on occasions different from one another" is not an element that a prior jury would have found unanimously beyond a reasonable doubt. Because these facts are not susceptible to the categorical approach, they are not subject to *Apprendi*'s narrow exception.

---

[8] *See In re Roneika S.*, 920 A.2d 496, 596 (Md. Ct. Spec. App. 2007) ("the exact date of the offense is not an essential element of the offense, and is not constitutionally required to be set forth") (citation omitted).

Under these terms, because Mr. Keaton's indictment did not allege and a jury did not find the offenses upon which the government seeks an ACCA sentence were "committed on occasions different from one another," this Court cannot impose an ACCA on Mr. Keaton.

> **d.** **The Fourth Circuit's decision in *United States v. Boykin* is irreconcilable with *Mathis*.**

Additionally, the Fourth Circuit's decision in *United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012) has been wholly undermined by *Mathis*. In *Boykin,* the Fourth Circuit held that a court can look to the limited list of *Shepard*-authorized documents to determine whether "offenses were committed on occasions different from one another" under the ACCA. *Id.* at 470-71.

But in *Mathis,* the Supreme Court held that a sentencing court can only examine *Shepard* documents under the modified categorical approach to determine "which *element[s]* played a part in the defendant's conviction. . . . . In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Mathis*, 136 S. Ct. at 2253 (citations omitted). Therefore, *Mathis* plainly prohibits a sentencing court from rummaging through *Shepard*-authorized documents in search of facts that go beyond the elements of the offense of conviction. Because facts necessary to answering the ACCA separate occasions inquiry are non-elemental facts, it follows that this Court has no authority to rummage through any *Shepard* documents to look for these non-elemental facts.

In any event, even if this Court were permitted to turn to *Shepard*-authorized documents to determine whether Mr. Keaton's prior offenses were committed on occasions different from one another, the government has not met its burden here because it has produced no *Shepard*-

authorized documents from Mr. Keaton's prior cases to establish whether the prior offenses were committed on different occasions.

## Conclusion

In conclusion, Mr. Keaton should not be subject to the ACCA because his prior Maryland conviction for PWID-cocaine and his prior D.C. attempted distribution cocaine conviction both categorically fail to qualify as ACCA predicates, and the government failed to allege in the indictment and prove to a jury that these offenses were committed on occasions different from one another.

Respectfully submitted,

/s/

By: _____

Stephen Mercer #12855
RaquinMercer LLC
5906 Hubbard Drive
Rockville MD 20852
Tel:     (301) 880 – 9250
Fax:     (833) 816 – 5605
Email:   Steve@RaquinMercer.com

*Assigned Counsel for Demetrius Keaton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this Sentencing Memorandum was served this August 12, 2021, *via* the ECF system on all parties.

/s/

By: _____

Stephen Mercer #12855